| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK | **FOR PUBLICATION** |

-------------------------------------------------------------x

In re                                                    Case No. 05-19195-CEC

698 FLUSHING REALTY CORP.,                Chapter 11

                      Debtor(s)

-------------------------------------------------------------x

## DECISION

Appearances

| | |
|---|---|
| Wayne Greenwald, Esq.<br>Law Offices of Wayne Greenwald, P.C.<br>99 Park Avenue<br>New York, NY 10016 | Bruce Weiner, Esq.<br>Rosenberg, Musso & Weiner<br>26 Court Street, Suite 2511<br>Brooklyn, NY 11242 |

Renee Simon Lesser, Esq.
Simon Lesser P.C.
420 Lexington Avenue
Suite 345-6
New York, NY 10170

                                        CARLA E. CRAIG
                            United States Bankruptcy Judge

1

This matter comes before the Court on motions by Belitza Gomez and Torianne Thompson to dismiss this case, on the grounds that the petition was filed in bad faith. Thompson also seeks sanctions against debtor's counsel pursuant to 28 U.S.C. § 1927 and Fed. R. Bank. P. 9011.

The facts relevant to this motion are not in dispute. This chapter 11 bankruptcy case was filed on June 8, 2005. The debtor's sole asset is an apartment building located at 698 Flushing Avenue, Brooklyn, N.Y. (the "Property"). The debtor's sole shareholder and president is Rubin Brach. The debtor acquired the Property by warranty deed dated May 30, 2004 from Steuben Realty Corp. for $10 in consideration. Steuben Realty Corp. is controlled by Rubin Brach's son, Joseph Brach, and is an insider of the debtor. 11 U.S.C. § 101(31). Rubin Brach incorporated the debtor nine days prior to the date on which the deed was signed, obviously for the purpose of receiving the Property from his son's corporation.

Movants Gomez and Thompson are individuals holding judgments against Steuben Realty Corp. issued by Supreme Court, Kings County. Ms. Gomez's judgment, in the amount of $304,503.00, was entered on July 9, 2004, and Ms. Thompson's judgment, in the amount of $5,895,050.47, was entered on May 11, 2005. Both actions were pending at the time of the transfer of the Property from Steuben Realty Corp. to the debtor. Indeed, the transfer took place after entry of an order for a default judgment was entered in favor of Gomez, and only five days after an inquest had been held fixing the amount of Gomez's judgment.

Gomez and Thompson proceeded to seek enforcement of their judgments, and a Sheriff's sale of the Property was scheduled for May 11, 2005. On May 10, 2005, the debtor commenced an action in Supreme Court, Kings County against Gomez, Thompson and Steuben

Realty Corp. seeking an injunction preventing the Sheriff's sale, and seeking a determination that none of the defendants had any right, title or interest in the Property by virtue of the May 30, 2004 deed from Steuben Realty Corp. to the debtor. The Supreme Court, Kings County issued a temporary restraining order preventing the Sheriff's sale from going forward on May 11, 2005, but vacated that order on May 17. The debtor then obtained a second temporary restraining order, which was vacated on June 7, 2005, to permit a Sheriff's sale scheduled for June 8, 2005 to proceed. The Supreme Court's June 7 order states that the stay of the sale was vacated "based upon a no-consideration fraudulent conveyance to defeat impending judgments." Later that day the debtor sought a stay from the Appellate Division, Second Department, which denied the application. This bankruptcy case was commenced on the following day.

On June 22, 2005, the Supreme Court, Kings County issued its decision and order denying the debtor's application for a preliminary injunction. In so doing, the court held that the debtor had failed to demonstrate a likelihood of success on the merits, finding that "it is abundantly clear that the transfer was not an arm's-length transaction for actual consideration. Rather, it appears to be an inter-family transfer boldly intended to frustrate the defendants' rights to enforce the judgments." The court also held that injunctive relief must be denied because "the balance of the equities does not weigh in favor of the plaintiff, as it is evident that the transfer was not made in good faith."

Gomez and Thompson now seek to dismiss this bankruptcy case on the grounds that the petition was filed in bad faith, to frustrate enforcement of their judgments. The petition shows that, besides Gomez and Thompson, the debtor's creditors consist of Con Edison, owed $142.66; a management company, owed $736.31; an insurance company, owed $2,517.06; and

the New York City Department of Finance, owed $3,591.66, totalling $6,987.50. Although the debtor filed amended schedules listing additional creditors on the eve of the initial hearing of this motion, inquiry of debtor's counsel on the record on September 15, 2005 concerning the nature of these claims revealed that the added claims are in fact claims against Steuben Realty, some actually being expressly identified as such. The largest of these added claims have nothing to do with the Property, but are asserted against Steuben Realty by purchasers of other real estate from Steuben Realty for breach of warranty or the like. Other added claims are for services rendered to the Property during the time it was owned by Steuben Realty, but since none of these claims constitute liens against the Property, they are not claims against this debtor. The conclusion is inescapable that these amended schedules were filed in an effort to create the false impression that this debtor has a significant creditor body.

Section 1112(b) provides that "a court may dismiss a case under this chapter for cause." That provision goes on to provide a list of circumstances constituting cause for dismissal. "It is important to note that this list is illustrative, not exhaustive." In re C-TC 9th Avenue Partnership, 113 F.3d 1304, 1311 (2d Cir. 1997). As the Second Circuit held in C-TC 9th Avenue Partnership, a lack of good faith in filing the petition constitutes cause. "When it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the chapter 11 petition may be frivolous. Further, an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally – the debtor must have some intention of reorganizing." Id. at 1310 (citations omitted). In this connection, the C-TC court cited with approval In re Wally Findlay Galleries (New York), Inc., 36 B.R. 849, 850 (Bankr. S.D.N.Y. 1984), in which a chapter

11 case was dismissed as a bad faith filing based upon the bankruptcy court's finding that "the 'debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating,' and that the 'debtor is unable to propose a meaningful plan of reorganization until its litigation . . . is resolved,'" and based upon the conclusion that it was "'evident that the debtor seeks to use this court not to reorganize, but to relitigate. This is an impermissible use of chapter 11 . . . ." Id. (citations omitted).

This bankruptcy case was obviously filed in bad faith. This case is a two-party dispute between the debtor, on the one hand, and the movants, on the other. The movants contend that they are entitled to execute their judgments against the Property, and the debtor contends that they are not, and that they are not even unsecured creditors of the debtors. If the movants are correct, there is no possibility of reorganizing the debtor, given that the movants hold more than 75% of the claims against this debtor. This is so even if all of the claims listed on the debtor's amended schedules, including those which have nothing whatsoever to do with the debtor or the Property, are taken into consideration at face value. (If the claims added by amendment are not taken into consideration, the movants hold 99.9% of the claims against the debtor.) The conclusion that the debtor cannot reorganize if the movants are creditors follows from the requirement of § 1129(a)(10) of the Bankruptcy Code that a plan of reorganization may not be confirmed unless at least one impaired class of non-insider creditors votes in favor of it. Movant Thompson's claim dwarfs all other claims in this case, so that she dominates the class of unsecured claims. Section 1126(c) of the Bankruptcy Code provides that a class of claims has accepted a plan only if creditors holding at least two-thirds in amount and a majority in number of the voting claims of that class have voted in favor of the plan. Given that Ms. Thompson

5

holds over one-third in amount of the unsecured claims in this case, and given that there is no other class of claims, no plan can be confirmed without her consent.

This analysis would lead to the same conclusion if Thompson's claim were classified as secured, based upon her claimed judgment lien on the Property. Section 506(a) of the Bankruptcy Code provides that a claim secured by a lien on property in which the estate has an interest is a secured claim to the extent of the value of the collateral, and an unsecured claim to the extent it exceeds the value of the collateral. The Property is valued on the debtor's schedules at $500,000. Even if Thompson's unsecured claim were reduced by that amount to $5,500,000, she would still hold approximately 68% of the unsecured debt in this case, giving full credit to all the questionable claims added by amendment. Since she would be able to prevent acceptance of a plan by unsecured creditors unless she held less than 33.3% of the unsecured debt, it is clear that her opposition to a plan would prevent its confirmation under § 1129(a)(10).

At the initial hearing on this motion, debtor's counsel asserted that the debtor would solve the problem of its inability to confirm a reorganization plan without Thompson's affirmative vote, in the event that it is determined that Thompson is indeed a creditor of the debtor, by paying to Thompson, or perhaps to the unsecured creditor body as a whole, the appraised value of the Property, which the debtor will raise from other sources. But this proposal is premised upon the incorrect assumption that, by paying creditors the value of the Property, the debtor can avoid the operation of § 1129(a)(10) of the Bankruptcy Code, which requires that, where any class of claims is treated as impaired under the plan, the plan must be accepted by at least one impaired class, without giving effect to the votes of insiders. Debtor's counsel seems to

believe that the class of unsecured claims may be considered to be unimpaired if the class receives the value of the Property.  But this is wrong.  Section 1124 of the Bankruptcy Code provides that a class of claims is unimpaired only when "the plan –

> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or
>
> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or received accelerated payment of such claim or interest after the occurrence of a default –
>
> > (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;
> >
> > (B) reinstates the maturity of such claim or interest as such maturity existed before default;
> >
> > (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
> >
> > (D) does not other otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Paying the value of the debtor's assets to a class of claims thus does not render that class unimpaired, unless the claims will be paid in full, which they concededly will not be in this case. Therefore, since unsecured creditors, including movants, will be impaired under any scenario in this case, the requirements of § 1129(a)(10) are applicable, and the debtor will be required to obtain the acceptance of a plan by an impaired class of creditors, which it cannot do.

On the other hand, if the debtor is successful, and the Gomez and Thompson claims are disallowed, along with the other claims of creditors of Steuben Realty, there is no

need for a reorganization. When the Thompson and Gomez claims are deducted, along with the claims of creditors of Steuben Realty, the debtor has claims totalling $6,987.50, as enumerated above. These claims can be paid from the cash flow of the Property. Any assertion that this bankruptcy was filed for the purpose of resolving claims other than those of Thompson and Gomez is a transparent fiction.

This analysis demonstrates that this case is the very essence of a bad faith filing – commenced in an effort to gain the upper hand in state court litigation, with a demonstrable absence of any possibility of confirming a chapter 11 plan. As the Second Circuit stated in C-TC 9th Avenue Partnership, "[w]hen it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceeding and no realistic chance of reorganizing, then the chapter 11 petition may be frivolous . . . . Further, 'an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally – the debtor must have some intention of reorganizing'." 113 F.3d 1304, 1310 (citations omitted).

As Judge Feller recently explained,

> Chapter 11 petitions filed for the purpose of frustrating the legitimate processes of a non-bankruptcy forum constitute use of the reorganization vehicle inconsistent with the congressional intent. Chapter 11 relief should not be available to entities filing to obtain a perceived advantage in litigation with others or to provide an alternative judicial forum . . . .
> 
> \* \* \*
> 
> An important factor to consider in determining whether a Chapter 11 case was initiated in good faith is whether the reorganization effort essentially involves a two party dispute which can be resolved in a non-bankruptcy forum. These Chapter 11 cases do not represent efforts pitched to a "business's reorganization" or to "restructure a business's finances". They are essentially a two-party civil lawsuit involving non-bankruptcy law in the bankruptcy court in the guise of being a reorganization of some sort

> under Chapter 11. Chapter 11 was never intended to be used as a fist in a two party bout. The Chapter is entitled reorganization and not litigation.

In re The Bridge to Life, Inc., 330 B.R. 351, 357 (Bankr. E.D.N.Y. 2005), citing In re HBA East, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988).

In this case, not only was this case filed in an effort to obtain a "perceived advantage in litigation" with movants and to obtain an "alternative judicial forum" for that litigation, it was filed in circumstances where the facts revealed by the petition conclusively demonstrate that there is no possibility of reorganization. It is difficult to imagine a clearer case of a bad-faith filing.

For all of the foregoing reasons, this bankruptcy case is dismissed. This Court retains jurisdiction to consider motions for sanctions against the debtor's counsel.

A separate order consistent with this opinion is being entered herewith.

Dated: Brooklyn, NY
December 7, 2005

*s/Carla E. Craig*
CARLA E. CRAIG
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                                                      Case No. 05-19195-CEC

698 FLUSHING REALTY CORP.,                           Chapter 11

                        Debtor(s)

-------------------------------------------------------------x

## MAILING CERTIFICATE

        I, Vivian Greene, Judicial Assistant to the Honorable Carla E. Craig, hereby affirm that on December 8, 2005 a copy of an Order was delivered to the parties named below by United States Postal Service first class mail, telecommunication, facsimile or any other delivery method, as follows:

| | |
|---|---|
| Wayne Greenwald, Esq. | Bruce Weiner, Esq. |
| Law Offices of Wayne Greenwald, P.C. | Rosenberg, Musso & Weiner |
| 99 Park Avenue | 26 Court Street, Suite 2511 |
| New York, NY 10016 | Brooklyn, NY 11242 |

Renee Simon Lesser, Esq.
Simon Lesser P.C.
420 Lexington Avenue
Suite 345-6
New York, NY 10170

Dated: Brooklyn, NY
         December 8, 2005

                                                            *s/Vivian Greene*
                                                             Vivian Greene